ADAM GORDON
United States Attorney
P. KEVIN MOKHTARI
Assistant U.S. Attorney
California Bar No. 253283
KATHERINE ROOKARD
Special Assistant U.S. Attorney
District of Columbia Bar No. 1510683
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8402
Email: Kevin.Mokhtari@usdoj.gov

Attorneys for United States of America

FILED

JUN 3 0 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 25CR1097-TWR-01 |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| HUA WANG, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Adam Gordon, United States Attorney, P. Kevin Mokhtari, Assistant United States Attorney, and Katherine Rookard, Special Assistant United States Attorney, and Defendant HUA WANG, with the advice and consent of Dana M. Grimes, counsel for Defendant, as follows:

//

//

//

//

PKM:PKM_2026-03-05

Def. Initials Wang
25CR1097-TWR-01

# I

## THE PLEA

### A.    THE CHARGE

Defendant agrees to plead guilty to Counts 1 and 2 of the Indictment charging Defendant with Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1349, 2326; and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(h).

### B.    CRIMINAL FORFEITURE

In addition, Defendant consents to the forfeiture allegations of the Indictment.  The forfeiture in this case is more fully set forth in the attached forfeiture addendum.

# II

## NATURE OF THE OFFENSE

### A.    ELEMENTS EXPLAINED

The offenses to which Defendant is pleading guilty have the following elements:

#### Count 1

1.    Beginning no later than 2019, and continuing up to and including 2023, there was an agreement between two or more persons to commit mail and wire fraud; and

2.    Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The elements of mail fraud are:

1.    Defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2.    The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or

2

Def. Initials W H

25CR1097-TWR-01

were capable of influencing, a person to part with money or property;

3.  Defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

4.  Defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

The elements of wire fraud are:

1.  Defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2.  The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.  The defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

As to the forfeiture, the Government would have to prove, by a preponderance of the evidence, the property constitutes or is derived from proceeds the Defendant obtained directly or indirectly from the violation.

## Count 2

1.  There was an agreement to commit promotion and concealment money laundering;

2.  Defendant knew the objectives of the agreement; and

3.  Defendant joined in the agreement with the intent to further its unlawful purpose.

The elements of promotion money laundering are:

1.  Defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of mail or wire fraud;

3

Def. Initials W H

25CR1097-TWR-01

2. Defendant knew that the property represented the proceeds of some form of unlawful activity; and

3. Defendant acted with the intent to promote the carrying on of mail or wire fraud.

The elements of concealment money laundering are:

1. Defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of mail or wire fraud;

2. Defendant knew that the property represented the proceeds of some form of unlawful activity; and

3. Defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

As to the forfeiture, the Government would have to prove, by a preponderance of the evidence, the property was involved in the offense or is traceable to such property.

B.   ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

Count 1

1. Beginning since at least 2019 and continuing up to and including 2023, there was an agreement between two or more persons to commit mail and wire fraud.

2. Defendant joined in the agreement knowing of its objects and intending the help accomplish those objects.

3. Defendant HUA WANG participated at least between 2019 through at least 2023.

4. In furtherance of the conspiracy, the following occurred:

4

Def. Initials W H

25CR1097-TWR-01

a. Members of the conspiracy operated a series of tech support, bank impersonation, government impersonation, and refund scams (as defined in the Indictment) targeting elderly victims throughout the United States, including the Southern District of California.

b. Members of the conspiracy located at India-based scam call centers contacted putative victims through unsolicited interstate and foreign wire communications, including pop-up ads, emails and phone calls. The purpose of these communications was for victims to call the scam call centers.

c. Once a putative victim called the scam call center, members of the conspiracy used social engineering techniques to build trust with victims. In many instances, conspirators also had victims download commercially available remote desktop software, which they used to remotely access victims' computers and to identify how much money a victim had in his/her bank account(s).

d. Using one or more of the scams above, members of the conspiracy then induced victims: (i) to send bulk cash via private and commercial interstate carriers to locations throughout the United States (hereafter "victim packages"); (ii) to purchase gift cards and to provide the gift card information to the scammers; and/or (iii) to wire money to foreign bank accounts.

**Mailing of Bulk Cash in Express Mail Packages.**

e. Once a victim had been defrauded into sending bulk cash via an express mail package, a co-conspirator at an India-based scam call center would obtain a recipient name and an address from a U.S.-based co-conspirator. Recipient names were fictitious names; recipient addresses were for short-term rentals, including ones located in the Southern District of California.

f. Victims were then instructed to withdraw bulk cash from their bank accounts, to conceal the cash in packages, and to send cash-laden packages through express mail via private and commercial interstate carriers to the names and addresses provided by the conspirators.

5

Def. Initials W H
25CR1097-TWR-01

g. To facilitate receipt of victim packages, members of the conspiracy in the United States, including defendant HUA WANG, booked short-term rentals in a hub-and-spoke pattern: a hub would be booked for approximately one week; spoke locations would be booked nearby for shorter stays. After some time, members of the conspiracy would relocate to a new location and continue the pattern.

h. Using fraudulent driver's licenses or IDs matching fictitious recipient names, members of the conspiracy in the United States then retrieved the victim packages.

5. Defendant obtained money and property by means of materially false and fraudulent pretenses, representations and promises.

6. Defendant acted with the intent to defraud, that is the intent to deceive and cheat.

7. Defendant also agrees that the government can prove the following:

a. The conspiracy specifically targeted individuals over the age of 55 with a campaign that included electronic messages, telephone calls, and text messages to induce the purchase of goods and services. More than 10 persons over the age of 55 were victimized by defendants during the course of their campaign.

b. The victims of the fraud scheme were vulnerable, elderly, with ages averaging in the mid- to late-70s, but with victims as old as 97 years-old.

c. At least 10 victims suffered substantial financial hardship as a result of the fraud scheme.

d. During defendant HUA WANG's participation in the conspiracy, the conspiracy received approximately 2,000 victim packages.

e. The average victim loss per package was approximately $32,000.

f. The amount of loss that was reasonably foreseeable to Defendant and within the scope of Defendant's agreement was over $25 million.

g. Defendant relocated, and participated in relocating, the fraudulent scheme to other jurisdictions to evade

6

Def. Initials WH

law enforcement; and a substantial part of the fraudulent scheme was committed from outside of the U.S.

h. The offense involved sophisticated means and defendant intentionally engaged in and caused the conduct constituting sophisticated means.

## Count 2

1. Between at least 2019 and 2023, there was an agreement between two or more persons to commit promotion and concealment money laundering.

2. Defendant HUA WANG joined in the agreement, knowing of its objects, and intending to further its unlawful purpose.

3. Defendant HUA WANG participated at least between approximately 2020 through the date of his arrest.

4. In furtherance of the conspiracy, the following occurred:

   a. Defendant conducted financial transactions involving property that represented the proceeds of the mail and wire fraud scheme described above.

   b. Defendant knew that the property in the transactions represented the proceeds of some form of unlawful activity;

   Concealment Money Laundering:

   c. Once members of the conspiracy retrieved a victim package using the hub-and-spoke pattern of short-term rentals, they would deliver the cash-laden packages, including while in the Southern District of California, to other members of the conspiracy. Defendant knew the purpose of these transactions was to conceal the nature, location, source, ownership, or control of the fraud proceeds and to conceal the fact that the money was from the mail and wire fraud scheme described above.

   d. In March 2021, members of the conspiracy, including Defendant HUA WANG, were operated the fraud scheme in the Las Vegas, NV area.

7

Def. Initials WH
25CR1097-TWR-01

  i. On March 4, 2021, a co-conspirator drove from Las Vega, NV towards Los Angeles, CA. Concealed within his vehicle was approximately $70,000 in bulk cash that were proceeds of the fraud scheme.

  ii. On March 12, 2021, Defendant HUA WANG and two co-conspirators drove from Las Vegas, NV toward Los Angeles, CA. Concealed within the vehicle and on WANG's person were approximately $120,860 in bulk cash that were proceeds of the fraud scheme.

  iii. In both instances, the bulk cash was being transported to deliver it other members of the conspiracy in the greater Los Angeles area so it could be further laundered.

 Promotion Money Laundering:

e. Members of the conspiracy also conducted financial transactions using the fraud proceeds that were intended to promote the underlying fraud scheme, such as (1) to pay cash to co-conspirators for retrieving victim packages; (2) to pay for short-term rentals used as part of the scheme; and (3) to pay for travel expenses used in furtherance of the scheme.

## III

## PENALTIES

The crimes to which Defendant is pleading guilty carry the following penalties:

### Count 1

A. a maximum 40 years in prison[1];

B. a maximum $1,000,000 fine;

C. a mandatory special assessment of $100 per count;

D. a term of supervised release of up to 5 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to

---

[1] The maximum penalty is increased to 30 years under 18 U.S.C. §§ 1341, 1343 (affecting a financial institution), and increased thereafter to 40 years under 18 U.S.C. § 2326(2).

8

Def. Initials _WH_

25CR1097-TWR-01

serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E.    forfeiture to the United States of any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

In addition, pursuant to Title 18, United States Code, Section 3663A Defendant shall be subject to an order of restitution to victims of the offense or the estates of such victims requiring Defendant to repay such persons at least $64,000,000.

Count 2

A.    a maximum 20 years in prison;

B.    a maximum $500,000 fine, or twice the value of the property involved in the transaction, whichever is greater;

C.    a mandatory special assessment of $100 per count;

D.    a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E.    forfeiture to the United States of any property, real or personal, involved in the offense or any property traceable to such property.

In addition, pursuant to Title 18, United States Code, Section 3663A Defendant shall be subject to an order of restitution to victims of the offense or the estates of such victims requiring Defendant to repay such persons at least $64,000,000.

//

//

9

Def. Initials _W H_
25CR1097-TWR-01

## IV
### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND
### UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## V
### DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE
### PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a

10                                    Def. Initials _W G_
                                      25CR1097-TWR-01

defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

11

Def. Initials _WH_

25CR1097-TWR-01

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

Def. Initials WB

25CR1097-TWR-01

**X**

**PARTIES' SENTENCING RECOMMENDATIONS**

A.    SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

| | | | |
|---|---|---|---|
| 1. | Base Offense Level [USSG § 2B1.1] | | 7 |
| 2. | Loss Amount [§2B1.1(b)(1)(K)] [More than $25M] | | +22[2] |
| 3. | 10+ Victims; Substantial Hardship 1+ Victims [§2B1.1(b)(2)(A)] | | +2 |
| 4. | Relocated Jurisdictions to Evade LE; Substantial Part of Scheme Outside US; Sophisticated Means [§2B1.1(b)(10)] | | +2 |
| 5. | Possession/Use of False IDs/ Authentication Feature [§2B1.1(b)(11)] | | +2 |
| 6. | Money Laundering [§2S1.1] | | +2 |
| 7. | Vulnerable Victims, Large Number [§3A1.1(b)(2)] | | +4 |
| 8. | Role in the Offense [§ 3B1.1/2] | | *[3] |
| 9. | Acceptance of Responsibility [§ 3E1.1] | | -3 |
| 10. | Zero-Point Offender (if applicable) [§ 4C1.1] | | -2 |
| 11. | Full Appellate Waiver [§ 3553(a)] | | -2 |

//

---

[2] Based on an estimated 2,000 packages and estimated $32,000 per-package loss, which results in approximately $64,000,000 in loss.

[3] The parties may argue the applicability of any mitigating/aggravating role adjustment.

13                                            Def. Initials _WH_

25CR1097-TWR-01

B.    ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1.    Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2.    Falsely denies prior criminal conduct or convictions;

3.    Is untruthful with the Government, the Court or probation officer; or

4.    Breaches this plea agreement in any way.

C.    FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant **may** request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D.    NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category.

E.    "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

14

Def. Initials _WH_

F.   PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The Government will recommend that Defendant be sentenced to the **low end** the advisory guideline range recommended by the Government at sentencing.

G.   SPECIAL ASSESSMENT/FINE

1.   Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2.   Fine

The parties will not recommend imposition of a fine due to the substantial restitution to be ordered, due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program, likely would exceed the amounts that could reasonably be expected to be collected.

H.   SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

## XI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence,

15

Def. Initials

25CR1097-TWR-01

including any restitution order up to $64,000,000. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

    1.    Failing to plead guilty pursuant to this agreement;

    2.    Failing to fully accept responsibility as established in Section X, paragraph B, above;

    3.    Failing to appear in court;

    4.    Attempting to withdraw the plea;

    5.    Failing to abide by any court order related to this case;

//

//

16

Def. Initials _WH_

25CR1097-TWR-01

6.    Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

7.    Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly,

17

Def. Initials _WH_

25CR1097-TWR-01

voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

### XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

### XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//
//
//
//
//
//
//
//
//
//

Def. Initials _WH_

25CR1097-TWR-01

## XV

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

ADAM GORDON
United States Attorney

June 15, 2026
DATED

P. KEVIN MOKTHARI
Assistant U.S. Attorney
KATHERINE ROOKARD
Special Assistant U.S. Attorney

4/21/2026
DATED

DANA M. GRIMES
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

4/21/2026
DATED

HUA WANG
Defendant

19

Def. Initials

25CR1097-TWR-01